R.J. Coughlan, Jr. (State Bar No. 91711)
Cathleen G. Fitch (State Bar No. 95302)
COUGHLAN SEMMER & LIPMAN, LLP
501 West Broadway, Suite 400
San Diego, California 92101
Telephone:    (619) 232-0800
Facsimile:    (619) 232-0107

Michael T. O'Halloran (State Bar No. 99085)
Law Office of Michael T. O'Halloran
1010 Second Avenue, Suite 1727
San Diego, California 92101
Telephone:    (619) 233-1727
Facsimile:    (619) 233-6526

Attorneys for DLA PIPER LLP (US)
and BRIAN FOSTER

# UNITED STATES BANKRUPTCY COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re<br><br>BRIARWOOD CAPITAL, LLC,<br><br>Debtor. | Bankruptcy No. 10-02677-PB11<br>Chapter 11 |
| BRIARWOOD CAPITAL, LLC<br><br>Plaintiff,<br><br>v.<br><br>HCC INVESTORS, LLC,<br><br>Defendant. | Adversary Proceeding No. 10-90184-PB<br><br>**DLA PIPER LLP (US)'S AND BRIAN FOSTER'S MOTION TO QUASH SUBPOENA**<br><br>Date:    May 31, 2011<br>Time:    11:00 a.m.<br>Judge:   Hon. Peter W. Bowie<br>Dept:    4 |

## I.    INTRODUCTION

Moving parties DLA Piper LLP (US) ("DLA Piper") and Brian Foster seek to quash a subpoena issued to DLA Piper on behalf of the debtor Briarwood Capital LLC's Bankruptcy Trustee Leslie Gladstone ("Trustee") in the captioned adversary proceeding, to produce a confidential Settlement Agreement reached between certain Lennar entities and HCC Investors,

1  and third parties DLA Piper and Brian Foster in state court litigation.  The Subpoena is attached

2  herewith as Exhibit 1.  DLA Piper and Brian Foster were sued in two state court malpractice

3  cases, one brought by Lennar Homes of California Inc. and the other by Lennar Homes of

4  California, Inc., Lennar Land Partners II, LLP II HCC Holdings, LLC  ("Lennar") and HCC

5  Investors.  Lennar, HCC Investors, DLA Piper and Brian Foster entered into a confidential

6  Settlement Agreement earlier this year that was reached after extensive settlement negotiations,

7  including two all-day mediations and continuing communications between the parties and the

8  mediator until the confidential Settlement Agreement was finally executed.  The confidential

9  Agreement ended all litigation between those parties, which, absent settlement, promised to be

10 extraordinarily comprehensive and expensive, and would have involved massive use of court

11 resources.  (See Declaration of R.J. Coughlan, Jr. dated March 18, 2011.)

12       The express confidentiality terms of the Settlement Agreement were intensely negotiated

13 and were an integral part of the Settlement Agreement, and without them no settlement would

14 have occurred.  (See Declaration of R.J. Coughlan, Jr. dated March 17, 2011.)  The purpose and

15 intent of the confidentiality terms are to protect the personal and financial privacy of all of the

16 parties thereto, to allow a settlement of hotly contested and protracted litigation, preserve

17 valuable resources, and to allow these parties to buy their peace.

18       The Trustee's subpoena to DLA Piper should be quashed because the Trustee cannot

19 make the requisite showing of any actual relevance the Settlement Agreement might have to the

20 instant proceedings, sufficient to overcome the policies behind protecting mediation

21 confidentiality, encouraging settlements and protecting the financial privacy rights of third

22 parties DLA Piper and Brian Foster.  To obtain disclosure, Briarwood's Trustee should first

23 specify  how the private confidential settlement between third parties DLA Piper, Brian Foster,

24 Lennar and HCC Investors is actually and directly relevant to important issues in the case.[1]  DLA

25

26     [1] The Complaint [Docket No. 1, Case No. 1. Case No. 10-90184] alleges that HCC
Investors has failed to pay to Briarwood Capital management fees, override fees and transfer fees
27 alleged to be due pursuant to the HCC Investors operating agreements.  Those allegations, to
DLA Piper and Foster's knowledge, have no relation to the Settlement Agreement.  (See
28 Declaration of R.J. Coughlan, Jr. dated March 18, 2011.)

1  Piper and Brian Foster respectfully submit that the Trustee in this matter cannot articulate any
2  valid policy reasons why the confidential Settlement Agreement should be discoverable, and
3  cannot make the requisite showing that the confidential Settlement Agreement implicates
4  Briarwood Capital, LLC and/or its Trustee here.  Lennar and Briarwood Capital, LLC have
5  pending multiple lawsuits in Bankruptcy Court and in California State and appellate courts
6  involving the relationship between Briarwood Capital, Nicolas Marsch III and Lennar or HCC
7  Investors.  Neither DLA Piper nor Brian Foster are parties to any of those proceedings any
8  longer.  The discovery of the confidential Settlement Agreement and its essential terms would
9  seriously harm DLA Piper and Brian Foster by disclosing personal and financial information.

10  **II.     THE TERMS OF THE CONFIDENTIAL SETTLEMENT AGREEMENT**
11  **         SOUGHT ARE NOT SUBJECT TO DISCOVERY.**

12  Without a particularized showing by the Trustee of relevance and admissibility, the
13  Settlement Agreement is entitled to confidentiality and DLA and Brian Foster are entitled to their
14  privacy rights in financial information.  *See, Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 34
15  (1984) (The broad disclosures permitted by the Federal Rules may be overcome if the disclosure
16  sought "may seriously implicate privacy interests of litigants and third parties."); *City of*
17  *Hartford v. Chase,* 942 F.2d 130, 135-136 (2d Cir. 1991).  In seeking the disclosure of a private
18  confidential Settlement Agreement, the courts generally require that the party seeking disclosure
19  meet a heightened standard of relevance above the broadly permissible scope of discovery under
20  Federal Rule of Civil Procedure 26(b) (1).  *Bottaro v. Hatton Assocs.,* 96 F.R.D. 158 (E.D.N.Y.
21  1982).  In that situation, the courts recognize they may make "any order which justice requires to
22  protect a party or person from annoyance, embarrassment, oppression or undue burden or
23  expense" upon a showing of good cause.  F.R.C.P. 26(c).
24  "When the requested discovery concerns a confidential settlement agreement, the
25  majority of courts considering the issue have required the requesting party to meet a heightened
26  standard [for discovery], in deference to Federal Rule of Evidence 408, and the public policy to
27  encourage settlements and to uphold confidentiality provisions." *Young v. State Farm Auto*
28  *Insurance Comp.*, 169 F.R.D. 72, 76-77 (S.D.W.Va. 1996); *see also Western Asbestos Company*

*v. Hartford Accident and Indemnity Company (In re Western Asbestos Co.)*, 416 B.R. 670, 709-710 (Bankr. N.D. Cal. 2009).  Confidential settlement agreements are "entitled to at least as much privacy protection as a bank account or tax information" under California law.  *Hinshaw, Winkley, Draa, Marsh & Still v. Superior Court*, 51 Cal.App.4th 233, 241 (1996); *see also In re Western Asbestos Company v. Hartford Accident and Indemnity Company, supra*, 416 B.R. at pp. 705, 709 (federal court considered state law establishing privacy and noted federal cases have approved a heightened standard of discovery affecting the privacy interests of third parties.); *Dagdagan v. City of Vallejo*, 263 F.R.D. 632, 634 (E.D.Cal. 2009) (In mixed federal and state claim cases, although federal law is ultimately binding, forum state privilege law which is consistent with its federal equivalent significantly assists in applying privilege law to discovery disputes).

Like many federal courts, California law recognizes that "private financial information is worthy of protection from discovery" and "when seeking to discover such material, the proponent must make a higher showing of relevance and materiality than would be necessary for less sensitive material."  *Hinshaw, supra* at 237.  Recent California Supreme Court and federal cases recognize that confidential information provided within the confines of mediation is protected from disclosure absent express consent of all parties to the mediation.  *See, Cassel v. Superior Court*, 51 Cal.4th 113, 135 (2011) (legal malpractice claim may not be based on communications made in connection with mediation); *RDM Sports Group, Inc. v. Equitex, Inc. (In re RDM Sports Group, Inc.)*, 277 B.R. 415, 433-434 (Bankr. N.D. Ga. 2002) (court shifted the burden to the requesting party to make a particularized showing that admissible evidence will be generated by the discovery of a "settlement letter"); *Allen County, Ohio v. Reilly Indus.*, 197 F.R.D. 352, 353-354 (N.D. Ohio 2000) (court refused to allow discovery of correspondence between counsel for settling parties that did not contain statements of witnesses or the parties).

In protecting the confidentiality of private settlements, the courts have adopted a number of approaches.  As stated above, the better rule is that the court imposes a heightened standard of a particularized showing of relevance and admissibility on the party seeking disclosure.  *Bottaro v. Hatton Assocs., supra,* 96 F.R.D. at p. 160 ("[T]he better rule" is to require some

1  particularized showing of a likelihood that admissible evidence will be generated by the
2  dissemination of the terms of a settlement agreement; court barred discovery of the terms of a
3  settlement agreement of former co-defendant); *Fidelity Fed. Sav. and Loan Ass'n v. Felicetti*,
4  148 F.R.D. 532, 534 (E.D. Penn. 1993) (the court switched the burden of proof from the party
5  opposing discovery to the party seeking settlement information and found that moving party met
6  its burden as to only some settlement materials).  Vague or hypothetical scenarios of conceivable
7  relevance or admissibility are insufficient.  *Doe v. Methacton School District*, 164 F.R.D. 175,
8  176-177 (E.D. Penn. 1995) (discovery barred based on only a broad assertion that the settlement
9  could lead to admissible evidence and was "clearly" relevant.); *RDM Sports Group, Inc., supra*,
10 277 B.R. 415, 433 (Bankr. N.D.Ga. 2002).

11   Other courts fashion the analysis in terms of a showing of "good cause" by the party
12 seeking discovery such that upon demonstration that a confidential settlement agreement is
13 sought, the burden of demonstrating good cause for production shifts to the requesting party.  In
14 employing that analysis, the courts weigh the competing policy interests behind encouraging
15 settlements and third party privacy with the need for disclosure.  *See Hasbrouck v. BankAmerica*
16 *Housing* Services, 187 F.R.D. 453, 461-462 (N.D.N.Y. 1999) (on balance the public interest in
17 encouraging settlements and in promoting the efficient resolution of conflicts outweighed an
18 employer's slight interest in disclosure of the facts of a confidential settlement); *Blum v.*
19 *Schlegel,* 150 F.R.D. 38, 42 (W.D.N.Y. 1993) (court barred discovery of a third party professor's
20 tenure files finding privacy concerns outweighed marginal relevance of material sought); *Lesal*
21 *Interiors, Inc. v. Resolution Trust Corp.,* 153 F.R.D. 552, 562 (D.N.J. 1994) (court applied
22 heightened standard and barred discovery of settlements between FDIC and third party
23 developer); *Laxalt v. McClatchy*, 116 F.R.D. 455, 458 (D.Nev. 1986) (court withheld discovery
24 of state board documents containing sensitive material, finding a showing of minimal relevance
25 was outweighed by privacy and confidentiality interests); *Fidelity Federal Savings and Loan*
26 *Ass'n v. Felicetti, supra*, 148 F.R.D. at 534.

27   Still other courts determine whether a settlement agreement is protected from discovery
28 based on a settlement or mediation privilege analysis.  In *Folb v. Motion Picture Industry*

*Pension & Health Plans*, 16 F.Supp.2d 1164, 1170, 1175, 1179 (C.D. Cal. 1998), the court considered the experience of the forum state in determining whether to recognize a federal common law mediation privilege and held that "taking the foregoing authorities en masse, the majority of courts to consider the issue appear to have concluded that the need for confidentiality and trust between participants in a mediation proceeding is sufficiently imperative to necessitate the creation of some form of privilege.") In *Folb,* the court applied a federal mediation privilege to prevent disclosure of materials resulting from a private mediation in another case. The plaintiff sought to compel production of a mediation brief, correspondence between counsel for the settling parties and notes to the file regarding settlement communications, arguing that the defendants was trying to take a position that was inconsistent with the position he believes they took in settlement negotiations in another case. The court concluded that communications to the mediator and communications between parties during the mediation are protected from discovery. *Ibid.* at pp. 1167, 1180.

Whichever approach is adopted, the courts agree with the following. First, there is a strong policy in all jurisdictions of encouraging settlements. Keeping a settlement between private parties confidential is a strong aspect of motivating and encouraging parties to settle cases. Confidentiality often allows settlements which, as here, would otherwise not have occurred. *Hasbrouck v. Bank America Housing Services, supra*, 187 F.R.D. at 453-459 (confidentiality is an important corollary without which many lawsuits would remain unsettled"); *see also City of Hartford v. Chase, supra*, 942 F.2d at 135 (judicial assurance of confidentiality prerequisite to settlement); *Marine Midland Realty Credit Corp. v. LLMD of Michigan, Inc.*, 821 F.Supp. 370, 373 (E.D.Pa. 1993) ("confidentiality is often essential to the settlement of cases"). As the California Court of Appeal in *Hinshaw* pointed out, "the privacy of a settlement is understood and accepted in our legal system, which favors settlement and therefore supports attendant needs for confidentiality." *Hinshaw, supra*, 51 Cal.App.4th at 241. Protecting confidentiality clearly promotes the important public policy of encouraging settlements, which in turn conserves valuable judicial resources. *Hasbrouck*, *supra*, 187 F.R.D. at 459.

///

1 Second, a confidential settlement agreement is discoverable only upon a showing of good cause demonstrated by particularized need, relevance and admissibility.  In determining good cause the courts weigh the particular relevance and admissibility of the settlement agreement against the settling parties' financial and privacy interests and against the protections afforded settlement negotiations and mediation confidentiality expected by the settling parties.  *Doe v. Methacton School District, supra*, 164 F.R.D. at 176-177 ("None of these courts [that considered whether a non-settling defendant should have access to a settlement agreement that is confidential by agreement] have blithely permitted discovery, but rather, require some heightened showing of relevance or need.")

Third, courts have the power under Federal Rule 26 and inherent authority to issue "any order which justice requires to protect a party or person from annoyance, embarrassment, oppression or undue burden or expense".  F.R.C.P. 26(c); *Phillips ex rel. Estates of Byrd v. General Motors Corp.*, 307 F.3d 1206, 1211-12 (9th Cir. 2002) ("Most significantly, courts have granted protective orders to protect confidential settlement agreements.")  For example, in *Hasbrouck v. BankAmerica Housing Services, supra,* 187 F.R.D. at 460-461 the Northern District of New York issued a protective order preventing an employer's discovery of a confidential settlement agreement between the plaintiff and a former employer.  The employer argued that the settlement agreement was relevant to advance its affirmative defenses in an employee discrimination case.  The District Court rejected these arguments and noted that the parties in the underlying settlement "bargained for confidentiality" and "any minimal relevance [of the agreement] would not overcome the significant interests in maintaining confidentiality between" the parties to the agreement. *Ibid.* at p. 460.

Similarly, in *Olin Corporation v. Insurance Company of North America,* 603 F.Supp. 445, 450 (S.D.N.Y. 1985), the court reasoned that although the issue of appropriate shares of defense costs was pending, discovery of the terms of an agreement between the plaintiff and a co-defendant was not allowed in order to "safeguard the policy favoring settlements."

In this case, we respectfully submit that no requisite heightened showing of relevance or admissibility can be made by the Trustee, and that any balancing of the interest of the Trustee in

disclosure against the confidentiality afforded mediation documents and the interests of third parties DLA Piper and Brian Foster to financial privacy, tips heavily in favor of non-disclosure. DLA Piper and Brian Foster are not parties to the adversary bankruptcy cases and have a high expectation of privacy in their Settlement Agreement with Lennar and HCC. After two days of in-person mediation and many continued negotiations with the direct assistance of the mediator, the Settlement Agreement was reached upon the express condition of confidentiality. (See Declaration of R.J. Coughlan dated March 18, 2011.) Without disclosing the specific terms, the Settlement Agreement contains a broad Confidentiality provision subject only to limited disclosure under terms generally applicable to disclosure to governmental entities or court order but not to a subpoena by the private parties in this case.[2] The confidentiality the parties bargained for, expressly under California law, should be protected from full disclosure because it directly impacts the likelihood of financial information being revealed and publicized, and the potential for speculation and misinterpretation. (See Declaration of R.J. Coughlan dated March 18, 2011.)

This case stands in contrast to the few cases where the settlement was, upon balance, found to be discoverable because it was directly relevant to an issue in the case. In *Bennett v. La Pere,* 112 F.R.D. 136, 138 (D.R.I. 1986), the court found that the settlement between the plaintiff and the physician defendants was discoverable by the hospital defendants because it was relevant to the issue of damages the hospital defendants may have to pay. In *White v. Kenneth Warren & Son, Ltd.,* 203 F.R.D. 364, 368-369 (N.D. Ill. 2001) after noting that courts are wary of permitting disclosure of settlement negotiations, the court on balance permitted discovery of settlement agreements with co-defendants based on a finding they were relevant to issues of liability of the remaining defendants because of overlapping claims. There was no indication the settlement agreement at issue contained confidentiality provisions.

---

[2] Several courts based their analysis of potential disclosure on an *in camera* review of the settlement agreement sought to be disclosed. *See e.g. Young v. State Farm Mutual Automobile Ins. Co., supra,* 169 F.R.D. at 79*; Magnaleasing, Inc. v. Staten Island Mall,* 76 F.R.D 559, 561 (S.D.N.Y. 1977). DLA Piper and Brian Foster will make the Settlement Agreement available to the Court for this purpose if the Court believes it will aid in its analysis.

Similarly, in *Magnaleasing, Inc. v. Staten Island Mall,* 76 F.R.D. 559 (S.D.NY 1977) the court permitted disclosure of a settlement agreement between the judgment debtor and a third party only insofar as it related to the existence or transfer of defendants' assets sought by the judgment creditor.

In those cases, the party seeking disclosure demonstrated the direct relevance and/or admissibility of the settlement materials sought. Here, DLA Piper is not a party or co-defendant to this proceeding and its and Brian Foster's confidential settlement with Lennar and HCC Investors does not directly impact an issue of liability of HCC Investors for fees claimed payable by it to Briarwood Capital, LLC. (See Declaration of R.J. Coughlan dated March 18, 2011.)

### III. CONCLUSION

Through a confidential mediation process, third parties DLA Piper and Brian Foster reached a Settlement Agreement with Lennar and HCC Investors. The Settlement Agreement contains an express confidentiality clause. This Court should quash the subpoena from Briarwood Capital LLC's Trustee in order to protect and conserve the privacy and confidentiality of the settlement the parties mediated and bargained for.

Dated: March 18, 2011    Respectfully submitted,

COUGHLAN, SEMMER & LIPMAN, LLP

By:  */s/ R.J. Coughlan, Jr.*
    R.J. Coughlan, Jr.
    Cathleen G. Fitch

Dated: March 18, 2011    LAW OFFICE OF MICHAEL O'HALLORAN

By:  */s/ Michael T. O'Halloran*
    Michael T. O'Halloran

Attorneys for DLA PIPER LLP (US)
and BRIAN FOSTER

::odma\pcdocs\csl\77822\1